In re KEL–WOOD TIMBER PRODUCTS COMPANY, Debtor.

Kevin R. HUENNEKENS, Trustee, Plaintiff,

v.

Robert TYE, a/k/a Robert H. Tye, Jr., and Robert H. Tye, Jr. Trust, Defendants.

Bankruptcy No. 87–02581–R.

Adv. No. 89–0303–RT.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Oct. 5, 1990.

John O. Peters, Kevin R. Huennekens, Maloney, Yeatts & Barr, P.C., Richmond, Va., for plaintiff.

Charles L. Williams, Thompson & McMullan, Richmond, Va., for defendants.

MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Trial was held on the trustee's complaint to set aside prepetition transfers of money by the debtor to the defendant. The complaint alleged the debtor had made both preferential transfers, avoidable under 11 U.S.C. § 547, and fraudulent transfers, avoidable under 11 U.S.C. § 548. At the conclusion of trial the Court orally stated findings of fact and conclusions of law,

ruling that plaintiff was entitled to recover preferential transfers from the defendant under § 547 in the sum of $35,000.00; plaintiff was denied any recovery under § 548.

This opinion will supplement the court's oral findings and conclusions with respect to the preference issues under § 547.

### Facts

The debtor Kel–Wood Timber Products Company filed a chapter 11 petition on December 21, 1987; the case was converted to a chapter 7 case on February 22, 1988. Plaintiff Kevin R. Huennekens is trustee in bankruptcy of the debtor in the chapter 7 case.

Prior to filing bankruptcy and as debtor in possession, the debtor was in the business of operating a wood treatment plant. Darrell W. Kelsoe was sole shareholder and president of the corporation. Richard J. O'Marra held the position of chief operating manager of the debtor at least until the chapter 11 petition was filed.

In July 1987, Kel–Wood Timber Products of South Carolina, Inc. ("Kel–Wood South Carolina"), was formed to operate in South Carolina a facility similar to that of debtor. The initial directors of this new corporation were O'Marra, Kelsoe, and defendant Robert Tye; O'Marra was the incorporator and president. After formation of Kel–Wood South Carolina, O'Marra devoted most of his duties to this company rather than to the debtor.

The debtor was not a stockholder of Kel–Wood South Carolina. However, during 1987 debtor advanced funds to Kel–Wood South Carolina in excess of $343,000.00. These advances were loans made at the direction of either Kelsoe or O'Marra and represented an indebtedness of Kel–Wood South Carolina to debtor. This debt was reflected in the debtor's asset schedules of its chapter 11 petition as follows:

Other liquidated debts owing debtor: Funds advanced to Rick O'Marra to set up and operate a company known as Kel–Wood of South Carolina in the summer of 1987. This Company is solely operated by Rick O'Marra and not a subsidiary of Debtor Corporation. Funds to be paid out of sale (presently in process) of South Carolina

facility                    $225,000.00

Tye is a friend of Kelsoe, and they jointly own a condominium in Florida. He is also trustee of the defendant Robert H. Tye, Jr., Trust ("Tye Trust").

On October 22, 1987, at the request of Kelsoe, Tye caused the Tye Trust to wire transfer the sum of $48,000.00 to the debtor's bank account. This transfer of funds was a loan from Tye or Tye Trust to the debtor. Kelsoe had promised Tye the loan would be promptly repaid.

On November 5, 1987, the debtor wire transferred from its bank account to the account of Tye Trust the sum of $10,000.00 in partial payment of the $48,000.00 loan.

On November 13, 1987, Kel–Wood South Carolina wire transferred from its funds the sum of $25,000.00 to the account of Tye Trust in partial payment of the loan. These funds had come from Kel–Wood South Carolina because the debtor did not have the funds from which to make additional payments toward the loan from Tye. At the time of this transfer to Tye, O'Marra instructed the debtor's financial officer to give Kel–Wood South Carolina credit for the $25,000.00 payment toward Kel–Wood South Carolina's indebtedness to the debtor. O'Marra understood, as did Tye, that this was a payment on Tye's $48,000.00 loan to the debtor. However, credit for the payment was never entered on debtor's books.

Because the $25,000.00 transfer to Tye Trust represented repayment on Kel–Wood South Carolina's debt to debtor, it was a payment from property of the debtor toward the $48,000.00 loan from Tye or Tye Trust.

The two payments totaling $35,000.00 received by Tye or Tye Trust within 90 days prior to the debtor's chapter 11 petition enabled Tye or Tye Trust to receive more on the $48,000.00 loan of October 22, 1987, than the recipient would have received otherwise in the debtor's chapter 7 case.

**500**

### Discussion And Conclusions

Plaintiff, who is chapter 7 trustee of the debtor, asks this court to set aside and require the defendant to repay to the trustee cash payments made to the defendant prior to the filing of the debtor's chapter 7 petition.

The trustee relies upon § 547(b) of the Bankruptcy Code which provides for the trustee's avoidance and recovery of a debtor's preferential transfers, as defined by the statute.[1] In general, an avoidable preference is created when a debtor makes a transfer of its property to a creditor in payment of an antecedent debt within 90 days before the filing of the bankruptcy petition, which payment enables the creditor to receive more than the creditor would have received in a chapter 7 case of the debtor.

■ The burden of proof is on the trustee to establish each element of a preference. *Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214 (9th Cir.), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988).

The court has found that defendant loaned debtor the amount of $48,000.00 on October 22, 1987. Repayments on this loan (antecedent debt) were made to defendant by wire transfer from the debtor on November 5, 1987, in the amount of $10,000.00 and by a second transfer from Kel–Wood South Carolina on November 13, 1987, in the amount of $25,000.00. The debtor's bankruptcy petition was filed on December 21, 1987.

It is thus beyond question that $35,000.00 of an antecedent debt was repaid to the creditor defendant within 90 days of the filing of the debtor's bankruptcy petition. It is presumed and unrefuted that debtor was insolvent when the payments were made. 11 U.S.C. § 547(f).

At trial, defendant seriously contested just two of the necessary elements for a preference:

(1) Whether the $25,000.00 payment to Tye from Kel–Wood South Carolina was a "transfer of an interest of the debtor in property". 11 U.S.C. § 547(b).

(2) Whether as a result of the two payments, defendant received more than would otherwise have been received in the debtor's chapter 7 case. 11 U.S.C. § 547(b)(5).

### TRANSFER OF AN INTEREST OF PROPERTY OF THE DEBTOR.

■ Defendant argues that the $25,000.00 payment of November 13, 1987, was not a transfer of property of the debtor. The Court concludes that it was.

The Bankruptcy Code defines the term "transfer" as including

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property....

11 U.S.C. § 101(50). Undoubtedly, the sum of $25,000.00 was transferred to defendant. The key question here is whether this was a transfer of property of the debtor.

Section 547(b) does not define the term "property". However, case authority reflects that the term should be interpreted broadly, and it is appropriate to consider that property of the debtor's chapter 7 bankruptcy estate includes

> all legal or equitable interests of the debtor in property as of the commencement of the case.

1.  (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made—
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such

creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if—
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
    11 U.S.C. § 547(b).

11 U.S.C. § 541(a)(1).[2]  *See In re Bullion Reserve*, 836 F.2d at 1217; *Elliott v. Frontier Properties/LP (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416, 1419 (9th Cir. 1985); *Trejo v. County of Sacramento (In re Trejo)*, 44 B.R. 539, 540 (Bankr.E.D.Calif.1984); *General Office Furniture Wholesalers, Inc. v. U.S. Furniture Industries, Inc. (In re General Office Furniture Wholesalers, Inc.)*, 42 B.R. 232, 234–35 (Bankr.E.D.Va.1984).

If there is a limitation on this broad definition of property in the preference context, it may be under the principle that a preferential transfer must result in a diminution or depletion of the debtor's bankruptcy estate. *In re General Office Furniture Wholesalers, Inc.*, 42 B.R. at 235; 4 King Collier On Bankruptcy ¶ 547.03[2], p. 547–23 to 547.24 (15th Ed.)

To summarize the court's findings of fact, the evidence on the $25,000.00 payment reveals that the funds were wire transferred to defendant not by the debtor but by another corporation, Kel–Wood South Carolina. Kel–Wood South Carolina was operated by one O'Marra. At the time of the transfer, O'Marra still held the title of chief operating manager of debtor as well as president of Kel–Wood South Carolina. It is obvious that the relationship between the two corporations was not entirely arms length.

The evidence is uncontroverted that (1) Kel–Wood South Carolina was indebted to the debtor in a sum substantially in excess of $25,000.00, (2) O'Marra determined to make the wire transfer of these funds to the defendant as a payment to a creditor of the debtor, and it was so understood by the defendant, and (3) according to O'Marra's instructions to debtor's financial officer,

Kel–Wood South Carolina was to receive credit in the same amount toward its own indebtedness to the debtor. Thus the substance of the transaction was a transfer to the defendant of cash representing payment of debtor's receivable or right to repayment of funds it had advanced to Kel–Wood South Carolina.

Unquestionably, the debtor's receivable from Kel–Wood South Carolina was an asset of the debtor's chapter 7 estate,[3] and the transfer to defendant diminished the debtor's bankruptcy estate by reducing the amount of repayment to which debtor was entitled. O'Marra had authority to direct the payment for both debtor and Kel–Wood South Carolina. For this court to rely on the separate identities of the two corporations and ignore the fact that the $25,000.00 payment was intended by all entities involved, including the defendant, as a payment toward the defendant's $48,000.00 loan to debtor would lead to an absurd result.

Accordingly, the payment was a "transfer of an interest of the debtor in property" to the defendant within the letter and spirit of § 547(b).  *See Cohen v. Kern (In re Kennesaw Mint, Inc.)*, 32 B.R. 799 (Bankr. N.D.Ga.1983); *In re Moskowitz*, 13 B.R. 357 (Bankr.S.D.N.Y.1981), *application for interlocutory appeal denied* 14 B.R. 307 (D.C.S.D.N.Y.1981), *resolution of merits at* 14 B.R. 677 (Bankr.S.D.N.Y.1981).[4]

PAYMENT IN EXCESS OF AMOUNT TO BE RECEIVED IN DEBTOR'S CHAPTER 7 CASE.

The plaintiff trustee must establish that the $35,000.00 payment to defendant, an unsecured creditor, enabled defendant to receive more than would have been received if

**2.** The exceptions in § 541(a)(1) to this general rule are inapplicable here.

**3.** The debtor's bankruptcy asset schedules reflected that the debtor's advances were loans to O'Marra dividually. However, the evidence at trial established the loans were to Kel–Wood South Carolina. The result here would be the same even if the loans were to O'Marra.

**4.** Although the facts here do not bring this case under the so-called "earmarking" doctrine where allegedly preferential transfers to creditors represent loans by third parties, an important element of those types of cases is present here. Because of O'Marra's dual status as an executive of both corporations, it can be said that the debtor had control over determining the recipient of the payment. *Howdeshell of Ft. Myers v. Dunham–Bush, Inc. (In re Howdeshell of Ft. Myers)*, 55 B.R. 470, 474 (Bankr.M.D.Fla. 1985). See 4 King, Collier On Bankruptcy, ¶ 547.03, p. 547–27 to 547–29.

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(5).

■ The interpretation of this requirement by court decisions is to the effect that if the chapter 7 distribution to the class of creditors to which the recipient is a part (here unsecured) will be less than 100%, the creditor who has received an otherwise preferential payment on account has received more than would have been received in liquidation if the payment had not been made. *Palmer Clay Products v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936); *In re Lewis W. Shurtleff, Inc.*, 778 F.2d at 1421. 4 King, Collier On Bankruptcy, ¶ 547.08, p. 547–38 to 547–40. Analysis for this determination is made at the time of the filing of the debtor's bankruptcy petition. *Palmer Clay Products v. Brown*, 297 U.S. at 229, 56 S.Ct. at 450.

Debtor filed its chapter 11 petition on December 21, 1987, and the asset and liability schedules reflected that on that date the debtor had total indebtedness in the amount of $3,623,000.00 and assets in a total value of $2,465,005.00. There is other evidence of record that the debtor was and remained insolvent after the end of June 1987. After reorganization efforts failed, the chapter 11 case was converted to a chapter 7 case, and the trustee has been liquidating the debtor's assets.

Prima facie, the evidence reveals that in the chapter 7 case debtor's unsecured creditors will not receive 100% payment of their debts; in fact, no evidence has been presented to the contrary.

Accordingly, defendant in receiving payments of $35,000.00 received more than he would have otherwise in the debtor's chapter 7 case.

An order of judgment for the trustee has previously been entered.