**In re BEV OF VIRGINIA,
INC., Debtor.**

**Bruce H. Matson, Trustee, Plaintiff,**

**v.**

**Grease Monkey Int'l, Inc., Defendant.**

**Bankruptcy No. 96–32676–T.
Adversary No. 97–3208–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Sept. 28, 1998.

## MEMORANDUM OPINION

DOUGLAS O. TICE, JR., Bankruptcy Judge.

On December 24, 1997, the chapter 7 trustee Bruce H. Matson filed a complaint against Grease Monkey International, Inc. (GMI) for preferential transfer avoidance and recovery pursuant to 11 U.S.C. §§ 547(b) and 550(a). Trustee seeks to recover proceeds from GMI's sale of inventory, tools and equipment with a book value of $22,039.10. On February 4, 1998, GMI filed a motion to dismiss the complaint. The court denied GMI's motion in an order entered on March 31, 1998. Following GMI's answer to the trustee's complaint, the trustee filed a motion for summary judgment on April 28, 1998. On May 7, 1998, GMI filed a response to the trustee's motion and its own cross-motion for summary judgment.

The court heard argument on the motion and cross-motion for summary judgment on May 19, 1998. After argument, the court took the matter under advisement. For reasons stated in this opinion, the trustee's motion for summary judgment is granted, and GMI's cross-motion is denied.

### Findings of Fact

The debtor, BEV of Virginia, Inc., entered into a franchise agreement on December 31, 1991, to operate two "Grease Monkey" franchises in Richmond, one located at 8600 Midlothian Turnpike (Midlothian Store) and the other at 8509 Staples Mill Road (Staples Mill Store).[1] In June 1995 the debtor defaulted on the Staples Mill Lease and thereafter on the Midlothian Store lease.

On March 18, 1996, debtor entered an agreement with GMI to voluntarily surrender both stores and all personality contained therein to GMI. At the time of surrender debtor owed GMI $105,777.94 in unpaid rent, royalties, advertising fees, finance charges and material charges. The property surrendered to GMI on March 18, 1996, had a book value of $22,039.10.[2]

The property transferred to GMI on March 18, 1996, was encumbered with liens held by Mobil Oil Company (Mobil) and Edward J. Kendzior (Kendzior) in the amount of $48,000.00 and $37,254.75 respectively.

On May 17, 1996, the debtor filed for relief pursuant to Chapter 7 of the Untied States Bankruptcy Code.

### Discussion and Conclusions of Law

### Jurisdiction

This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). The court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1334. Venue for this action is proper pursuant to 11 U.S.C. §§ 1408 and 1409.

### Summary Judgment

A motion of summary judgment is governed by Federal Rule of Civil Procedure 56, incorporated into this proceeding by Bankruptcy Rule 7056. *See* Fed. R. Bankr.P. 7056. The court may consider pleadings, responses to interrogatories, admissions, and affidavits to determine whether there is a genuine issue as to any material fact in this matter. *See Falcone v. Prosperity Bank & Trust (In re Falcone)*, 146 B.R. 671, 673 (Bankr.E.D.Va. 1992). The court will grant summary judgment if there is not a material issue or fact that must be established at trial and the moving party is entitled to judgment as a matter of law. *See id.*

The movant must prove the elements of a preference as alleged in the complaint. *See* 11 U.S.C. § 547(b); *Huennekens v. Tye (In re Kel–Wood Timber Prod. Co.)*, 122 B.R. 498, 500 (Bankr.E.D.Va.1990). The court must view all inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Here the court finds that no material fact is in dispute and that summary judgment is appropriate.

### Preferential Avoidance

Within 90 days prior to filing its chapter 7 petition, the debtor surrendered assets to the defendant which had a value of $22,039.10. Although the assets were fully encumbered by liens of other entities, the defendant was an unsecured creditor of the debtor.

The first question is whether the transfer of inventory to GMI can be avoided as a preferential transfer pursuant to 11 U.S.C. § 547(b). For the following rea-

---

1. Debtor operated the Midlothian Store under a direct lease guaranteed by GMI and the Staples Mill Store pursuant to a sub-lease with GMI as the primary lessee/sublessee.

2. The inventory for the Midlothian and Staples Mill Stores had book value of approximately $8,776.18 and $6,062.92 respectively. Additionally, the debtor surrendered other property consisting of tools and equipment with a book value of $7,200.00.

sons the court finds the trustee has met his burden of proof that the transfer was preferential.

11 U.S.C. § 547(b) lays out the five elements which the trustee must prove to recover a pre-petition transfer as preferential.

[T]he trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

   (A) on or within 90 days and one year before the date of filing the petition;

   (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if

   (A) the case were a case under chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

*Transfer of an interest of the debtor in property*

The introductory language of section 547(b) requires a "transfer of an interest of the debtor in property." 11 U.S.C. § 547(b). GMI argues a transfer did not occur within the meaning of section 547(b). GMI refers to the trustee's complaint which alleges transfer of the "use and disposition of the [surrendered property] by GMI." GMI interprets the complaint to allege transfer as of the date of GMI's sale of the individual assets, some of which occurred post-petition and therefore, GMI

argues, are not preferential. The court holds, however, that the transfer of inventory occurred on March 18, 1998.

Transfer is given the broadest definition possible. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, at 5812–5813. The code defines transfer as:

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

11 U.S.C. § 101(54).

█ A transfer, to be preferential, must be of an interest in the debtor's property. An "interest of the debtor in property" is not defined by the code. State law determines whether an interest in property exists which can be transferred. *See American Bankers Ins. Co. of Florida v. Maness*, 101 F.3d 358, 363 (4th Cir.1996) (quoting *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Under Virginia law, a debtor with property encumbered by a security interest retains the ownership interest and, typically, the possessory interest in the property. *See, e.g., High Knob Assoc. v. Douglas*, 249 Va. 478, 457 S.E.2d 349, 352 n. 4 (1995). Title to the property is not affected by the presence of secured creditors. *See* Va.Code § 8.9–202 (Michie 1991).

█ A diminution of the debtor's estate indicates that a transfer of a debtor's interest in property has occurred. *See In re Kel–Wood Timber Prod. Co.*, 122 B.R. at 501. The value of the property and therefore the diminution of the estate is determined as of the time of transfer. Here both parties agree that the book value of the property was $22,039.10 on the date of transfer.

█ In the present case, whether the debtor maintained equity in the property

is irrelevant to the determination that a transfer in property occurred. The debtor was in possession of the assets prior to March 18 after which time the debtor relinquished possession, control and dominion over the assets to GMI. Possession, control and dominion constitute viable property interests of the debtor, the relinquishment of which satisfies the initial § 547(b) inquiry. *See WJM, Inc. v. Mass. Dep't of Public Welfare*, 840 F.2d 996, 1007 (1st Cir.1988) (citing S.Rep. No. 989, 95th Cong., 2d. Sess. 27 1978); *see also Barber v. Riverside Int'l Trucks, Inc. (In re Pearson Indus., Inc.)*, 142 B.R. 831, 840 (Bankr.C.D.Ill.1992) (citing *4 Collier on Bankruptcy*, § 547.03 (15th ed.1991)) (defining "transfer" as including "mere possession").

### To or for the benefit of a creditor

█ GMI claims it was not benefitted by the inventory transfer because it lost money after taking over the operations of the Midlothian and Staples Mill stores. The fact that GMI lost money overall, however, does not impact on the question of whether it benefitted from the inventory transfer.

█ A creditor benefits if it receives a greater distribution than it would actually receive when the bankruptcy assets are distributed. *See Palmer Clay Prod. Co. v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936). GMI is a creditor within the definition of 11 U.S.C. § 101 with a claim against the debtor for $105,775.94. *See* 11 U.S.C. § 101(5), (10). The estate currently holds $4,509.00 for distribution to all unsecured creditors. The disputed transfer of $22,039.10 to GMI is the final asset to be administered by the estate. GMI has therefore benefitted by the transfer.

3. Because this is a summary judgment motion the court must presume, as GMI has argued, that the assets transferred to GMI with a book value of $22,039.10 are fully encumbered by

### On account of an antecedent debt

As noted above, the debtor owed GMI $105,777.94 as of the date of the transfer.

### That enables the creditor to receive more than it would otherwise

█ The trustee has satisfied section 547(b)(5) if the trustee proves that (1) the creditor was unsecured; (2) the creditor holds a non-priority claim; and (3) the estate will not distribute a 100% payout to unsecured creditors. *See Tire Kings of Am., Inc. v. Hoffman Tire Co. (In re Tire Kings of Am., Inc.)*, 164 B.R. 40, 42 (Bankr.M.D.Pa.1993) (quoting Countryman, *The Concept of Avoidable Preference in Bankruptcy*, 38 Vand. L.Rev. 713, 735–36 & n. 137). Here, all three elements are satisfied. GMI is an unsecured creditor without a priority claim, and it is undisputed that a 100% distribution to creditors is impossible.

### 550(a) & 552 Recovery

█ The second issue is whether the trustee may recover the property from GMI pursuant to 11 U.S.C. § 550(a). The power to avoid a transfer pursuant to section 547(b) is separate from the power to recover the property pursuant to section 550(a). *See Congress Credit Corp. v. AJC Int'l*, 186 B.R. 555, 558 (D.P.R.1995).

█ An avoided transfer can be recovered pursuant to section 550(a) only if recovery is for the "benefit of the estate." 11 U.S.C. § 550(a). GMI argues that because the property is encumbered by the security interests of Mobil and Kendzior any recovery would not benefit the estate.[3]

█ GMI relies on the consent order among GMI, debtor and trustee entered on January 30, 1997, which states the debtor is without equity in the inventory surrendered to GMI. GMI asserts that the debtor's lack of equity is equivalent to a recovery by the trustee that does not ben-

Mobil and Kendzior with secured claims of $48,000.00 and $37,254.75. The debtor is therefore without equity in the transferred property.

316

efit the estate. However, lack of equity in the debtor does not equal lack of benefit to the estate because it is not the debtor who is recovering the property but the trustee on behalf of the estate.

It is sufficient for the purposes of this motion to find there may accrue some benefit to the estate by recovery from GMI. Because the secured creditors are not a party to this proceeding it is unnecessary to determine their interest in the disputed inventory transfer. Those issues will be addressed as they become necessary. It is sufficient that the estate may benefit from the recovery of the $22,039.10 from GMI.

Several courts have considered whether a pre-petition transfer of fully encumbered property to an unsecured creditor can be recovered by the trustee for the benefit of the estate. In each case the court held that the property was recoverable by the trustee free from the security interest of the secured creditor. *See Mellon Bank (East), N.A. v. Glick (In re Integrated Testing Products Corp.)*, 69 B.R. 901 (D.N.J.1987); *Hennessy v. Kennedy (In re Sun Island Foods)* 125 B.R. 615 (Bankr.Hawai'i 1991); *McGoldrick v. Juice Farms, Inc. (In re Ludford Fruit Prod.)*, 99 B.R. 18 (Bankr.C.D.Cal.1989).

While the court neither adopts nor rejects the reasoning of these cases, their analyses indicate a likelihood that the $22,039.10 transferred to GMI will be recovered free from the claims of secured creditors and thus provide a benefit to the estate.

An order consistent with this opinion will be entered.