**In re AMF BOWLING WORLDWIDE, INC., Debtor.**

**AMF Bowling Worldwide, Inc., Plaintiff,**

**v.**

**Herricks Fore Plan, Inc., Defendant.**

**No. 01–61119–DHA.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 13, 2002.

Wilkie Farr & Gallagher, New York City, Dion W. Hayes, Erin E. McDonald, John H. Maddock, III, Joseph S. Sheerin, McGuire Woods, LLP, Richmond, VA, Douglas M. Foley, McGuire Woods LLP, Norfolk, VA, for debtor.

B. Amon James, Office of U.S. Trustee, Richmond, VA, Robert B. Van Arsdale, Office of U.S. Trustee, Norfolk, VA, for U.S. Trustee.

Jonathan L. Hauser, Troutman Sanders LLP, Norfolk, VA, Lorna G. Schofield, Michael E. Wiles, Steven R. Gross, Debevoise & Plimpton, New York City, Philip C. Baxa, Troutman Sanders Mays & Valentine, LLP, Richmond, VA, for Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION AND ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This matter is before the Court on cross-motions for summary judgment. The issue is whether principles of collateral estoppel apply such that Herricks Fore Plan is precluded from litigating the validity of the lien-priming proposed by the debtor's debtor-in-possession ("DIP") financing arrangement which was approved by this Court on August 8, 2001. This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FINDINGS OF FACT

On July 2, 2001, debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. Debtor has been operating as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. 11 U.S.C. §§ 1107 and 1108. Debtor, AMF Bowling Worldwide, Inc., is owned by AMF Bowling, Inc., also a debtor in a separate Chapter 11 proceeding in this division. AMF Bowling Worldwide, Inc., commonly referred to as WINC, and its non-debtor foreign subsidiaries own and operate bowling centers in the United States and ten other countries. Part of their business also includes the manufacture and sale of bowling center equipment.

As of June 1, 2001, debtor operated approximately 400 bowling centers in 40 states and Puerto Rico and another 118 centers in ten countries. Of the 400 domestic bowling centers, debtor owns the real estate for 257 of these centers and leases the remaining 143 centers.

Herricks Fore Plan, Inc. ("Herricks") is the landlord of the leased bowling site operated by debtor in Jackson Heights, New York. The original lease was to expire on July 31, 2002; however, debtor exercised its option on June 21, 2001 to renew the lease and extend its term to July 31, 2023.

The lease for the center was modified four times. Included in the fourth modification of the lease, the version of the lease assumed by the debtor, was a provision that the tenant must comply with "the

provisions of Article 1, subdivisions 1(a)–1(i) of the Blumberg form of Security Agreement, form A 77, except as modified by this agreement, as if said provisions were fully set forth at length herein." *See* Debtor's Motion for Summary Judgment, Exhibit 3 at ¶ 9. Subdivision 1d of the Blumberg form of Security Agreement ("Blumberg form") provides as follows: "DEBTOR WARRANTS, COVENANTS AND AGREES AS FOLLOWS: ... To retain possession of the collateral during the existence of this agreement and not to sell, exchange, assign, loan, deliver, lease, mortgage or otherwise dispose of same without the written consent of the Secured Party." Further, subdivision 1f of the Blumberg form provides: "DEBTOR WARRANTS, COVENANTS AND AGREES AS FOLLOWS: ... To keep the collateral free and clear of all liens, charges, encumbrances, taxes and assessments." Herricks Motion for Summary Judgment, Exhibit E.

Debtor filed on July 2, 2001 a Motion Pursuant to Sections 105, 361, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 4001 and 6004 for Authorization to (I) Obtain Senior Secured Credit, (II) Use Cash Collateral, and (III) Grant Adequate Protection Therefor ("DIP Motion"). An interim hearing on this motion was scheduled for July 3, 2001 and an interim order was entered that day setting a final hearing on debtor's DIP Motion scheduled for August 8, 2001. On August 8, 2001, this Court held a final hearing on the DIP Financing Motion during which we heard argument from the Official Committee of Unsecured Creditors (the "Committee") on its objection to the DIP financing. We approved the financing after overruling the objections of the Committee. Herricks neither filed an objection to debtor's DIP Motion nor did it argue the matter before this Court at the August 8th hearing.

The Herricks lease was carved out of the July 26, 2001 Order Pursuant to Section 365(d)(4) of the Bankruptcy Code Extending Debtors' Time to Assume or Reject Certain Unexpired Leases of Non-Residential Real Property. Debtor requested permission to assume the Herricks lease as part of its motion dated August 14, 2001, to which Herricks filed an objection on August 23, 2001.

Debtor and Herricks filed motions for summary judgment regarding the assumption of the Herricks lease on October 12, 2001. Debtor requested a continuance of the October 22nd trial, which was granted and the hearing on the cross-motions for summary judgment was held December 3, 2001. At the December 3rd hearing, counsel for both sides represented that they were close to resolving the matter and sought yet another continuance. This Court requested that the parties present their arguments on the issues that had not yet been resolved by the parties. The parties presented brief arguments to the Court on the issue of collateral estoppel. The parties then requested that the Court withhold entry of a decision for approximately a week so that they could continue to resolve this matter without court intervention. After almost two weeks, the parties reported to the Court that they were unable to reach a resolution of the issue and requested the Court rule on the collateral estoppel issue. Having failed to settle this matter, the Court now renders its decision on the parties' cross-motions for summary judgment.

## CONCLUSIONS OF LAW

The parties motions and briefs contain arguments covering not only the issue of collateral estoppel, but also argue the timeliness of the discovery responses made by Herricks. Since the filing of these briefs, the parties agreed that Herricks

responses were timely filed, thereby mooting the argument advanced by debtor that Herricks waived its right to claim that the post-petition DIP financing Order constituted a breach of its lease because Herricks did not timely respond to requests for admissions on this issue, which arguably would have the effect of Herricks admitting to the waiver.

## A. Summary Judgment Standard

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Federal Rule 56 is incorporated in the bankruptcy courts via Federal Rule of Bankruptcy Procedure 7056. In deciding a motion for summary judgment, the Court must view the facts and inferences to be drawn from the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To defeat summary judgment, the nonmoving party must support the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hinkleman v. Shell Oil Co.*, 962 F.2d 372, 375–76 (4th Cir.1992). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548; *In re BEV of Virginia, Inc.*, 237 B.R. 311, 313 (Bankr.E.D.Va. 1998).

The issue presented for this Court's review is primarily a legal one. The parties do not dispute the existence and terms of the lease. They do not dispute the entry of the DIP Order which had the effect of priming Herricks' lien. What the parties dispute is whether principles of collateral estoppel apply to preclude Herricks from arguing the validity of the priming effect of the DIP Order. Without a factual dispute, the parties' motions for summary judgment on the collateral estoppel issue are ripe for determination.

## B. Collateral Estoppel

 The application of collateral estoppel acts as a bar to the relitigation of an issue that was decided in an earlier proceeding at which the party against whom the decision is asserted had a fair and full opportunity to litigate that particular issue. Collateral estoppel serves several different but important interests. Application of the doctrine conserves judicial resources by avoiding duplicative litigation. It prevents piecemeal litigation and ensures a more complete presentation of the parties' case. Finally, collateral estoppel reduces the risk of conflicting judgments on the same issue.

The principles of collateral estoppel and the factors to be evaluated by courts in the Fourth Circuit have been set forth in the case of *Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988). In *Combs v. Richardson*, the Fourth Circuit found that collateral estoppel would apply to preclude relitigation of an issue where:

(1) the issue sought to be precluded [was] the same as that involved in the prior action,

(2) that issue [was] actually litigated,

(3) it [was] determined by a valid and final judgment, and

(4) the determination [was] essential to the prior judgment.

*Id.* at 115 (quoting *Matter of Ross*, 602 F.2d 604 (3d Cir.1979)). The Court further held that principles of collateral estoppel may be applied in the bankruptcy setting. *Combs*, 838 F.2d at 115.

Whether Herricks is barred from relitigating the issue of the priming of liens from the DIP Order essentially hinges on whether the issue was actually litigated in prior proceedings before this Court. First, we find the issue sought to be precluded is the same as that involved in the hearing on the DIP Order. The priming of all other liens by the DIP Order was part of the motion to approve the DIP financing—a motion that all parties were on notice was set for hearing on August 8, 2001. Second, the issue was determined by a valid and final judgment. The DIP Order was entered by this Court on August 8, 2001. The motion came before this Court on a final hearing and no appeal was taken of the order entered after the final hearing. Finally, the determination was essential to the prior judgment.

It is common for a DIP financing agreement to contain a priming provision as this is frequently the sole basis on which lenders will provide financing to a debtor in bankruptcy. Further, the DIP Order states that the "relief requested ... is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their properties." DIP Order at ¶ H. Therefore, three of the four factors used to evaluate whether collateral estoppel should apply favor application of the doctrine.

■ The Court "must make a careful and considered determination that the issue was actually litigated and necessary to the earlier decision." *See Combs*, 838 F.2d at 116. This Court previously held that this involves an analysis into whether a "thorough presentation of the issues [was] presented" to the Court. *Kulesa v. Stankovich (In re Stankovich)*, 171 B.R. 27, 30 (Bankr.E.D.Va.1994). Because of the effect of such a decision, this analysis must be done with "special care." *Combs*, 838 F.2d at 116. From an evidentiary standpoint, the Court may "look to the pleadings and other materials of record in the prior action, and if those be inconclusive, to extrinsic evidence for further aid." *Watergate at Landmark Condominium Unit Owners Assoc. v. Wauben (In re Wauben)*, No. 96–1427, 1997 WL 436936, 1997 U.S.App. LEXIS 20847 (4th Cir. Aug. 5, 1997).

However, we find that the issue was not in fact litigated. The debtor provided notice to all parties that their liens would fall in priority behind the DIP lender upon entry of the DIP Order. The Court heard arguments in favor of the motion from debtor and from the Committee regarding its objections to the DIP Order. The issue of landlord liens being primed by the DIP Order was never addressed to the Court. This Court finds the pleadings and materials prior to that hearing date are inconclusive on that issue. Thus, any extrinsic evidence would come at the time of the hearing on the issue or from the submissions of the parties relative to these motions for summary judgment. Of the many issues argued before the Court, none involved the priming of all of the landlord's then-existing liens. Further, the submissions of the parties that accompanied these briefs do not indicate that this issue was in fact litigated prior to the motions and briefs at issue here.

## C. Waiver

■ While collateral estoppel does not preclude Herricks from litigating the priming of its lien, we find that Herricks has effectively waived such a claim by not objecting to the DIP Order or seeking the

Court's reconsideration or appeal of that order.

■ Waiver principles may be applied where "a party voluntarily or intentionally relinquishes a known claim right." *Varat Enters., Inc. v. Nelson, Mullins, Riley and Scarborough (In re Varat),* 81 F.3d 1310, 1317 (4th Cir.1996). Waiver may be applied in the bankruptcy context. *Id.* The availability of a waiver defense is especially important in the bankruptcy system. Many routine motions are often decided by the application of waiver as bankruptcy has a very rigid set of rules governing notice and the opportunity to respond. If no response or objection is made to a particular motion, especially in cases the size of this debtor's reorganization, the motion will be granted. To put the debtor through a full evidentiary hearing on issues where no parties have objected would unduly burden the bankruptcy system and add great expense to a debtor that is struggling to survive.

Waiver is most often applied in the bankruptcy context to the confirmation process of debtor's proposed plan of reorganization. Courts routinely hold that when a party fails to file an objection to the debtor's plan of reorganization and that plan is confirmed, that party cannot later attack a claim or provision in the debtor's confirmed plan. *See, e.g., Varat Enters.,* 81 F.3d at 1318–1319; *Turney v. Federal Deposit Ins. Corp.,* 18 F.3d 865, 868–69 (10th Cir.1994) (applying due process argument rather than a pure waiver argument); *Spartan Mills v. Bank of Am.,* 112 F.3d 1251, 1257–58 (4th Cir.1997) (due process applied to preclude collateral attack on DIP financing agreement that granted lender a first priority lien on all of debtor's assets); and *Woods v. Kenan (In re Woods),* 173 F.3d 770, 782 (10th Cir. 1999) (applying due process to establish

debtor's waiver of its objection to the sale of estate property).

The Court in *In re Varat Enterprises* noted that debtor's creditors have the duty of "policing the plan's treatment of claims." *In re Varat Enters.,* 81 F.3d at 1318. While this case does not involve the plan's treatment of Herricks' claim, it does involve the treatment of Herricks' lease under the DIP Order—the effect of which may impact any claim Herricks has under the plan. Thus, Herricks had an obligation to object to the DIP financing agreement if it desired to hold on to its first lien on the debtor's collateral.

■ An important element in the Court's evaluation of whether principles of waiver should apply to preclude the party's litigation is due process. The party against whom waiver is asserted must have had proper notice of the motion and the opportunity to object and present arguments at a hearing. Without proper notice, a party cannot be held as having relinquished a known claim or right as that party would not have knowledge of its claim to be able to release it. Herricks does not dispute the fact that it had notice of the DIP Order and admits it knew the effect of the DIP Order on its lien. Herricks Responses to Debtor's First Request for Admissions and Interrogatories, Debtor's Exhibit 1 at ¶¶ 26–33.

Essentially what Herricks asserts is that it did not know of the consequences of its failure to object to the motion and it assumed the issue of lien priming would be appropriate only at the lease assumption stage. We do not agree. Herricks' objection would have been properly made at the time set for objections to the DIP Order or at the hearing on that issue. It cannot now seek to litigate the subordination of its lien which became effective upon entry of the DIP Order. If Herricks' intent was for its lien to retain its priority status, then it should have objected to the entry of the

DIP Order. The fact that Herricks did not anticipate this Court's ruling on the matter or that it assumed that the priming of its lien was an issue at the lease assumption stage does not create a new right of due process that protects it from its own misunderstanding. *See In re Turney*, 18 F.3d at 869 (Holding that "[d]ebtor's contentions reflect nothing more than a failure to comprehend what was set before him. No concept of due process can be invoked to protect him from that failure."); *see also Spartan Mills*, 112 F.3d at 1258 (Holding that Spartan Mills could not now litigate issues relating to its lien as "Spartan Mills apparently determined that it would litigate its claim at a different time and in a different court. But in doing so, it left standing final orders that adjudicated its lien claim."). Where a party has adequate notice of a motion, fails to appeal the entry of an order granting the motion, and fails to avail itself of the process to object to its treatment under the motion and order, a new due process right does not arise and all parties are bound by the order. Herricks had timely notice of the entry of the DIP Order, Herricks failed to object to that order, and Herricks failed to appeal that order. Herricks is deemed to have waived its objection to the priming of its liens.

## CONCLUSION

For the foregoing reasons, debtor's motion for summary judgment is DENIED and Herricks motion for summary judgment its DENIED. However, we find that Herricks is precluded from litigating the validity of the lien priming accomplished by the DIP Order because it allowed that order to become final without an objection to its finality.

IT IS SO ORDERED.