**In re Jerimiah L. RICHARDS, Alberta H. Richards, Debtors.**

**Bruce E. Robinson, Plaintiff,**

v.

**Rapid Funding, LLC, USB Paine Webber, Defendants.**

**Bankruptcy No. 01–35526–DOT.
Adversary No. 02–06989–DOT.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 5, 2004.

Robert H. Chappell, Spotts, Fain PC, Richmond, VA, Chapter 7 Trustee.

Teddy J. Midkiff, Marvin, Alan, Rosman & Associates, Richmond, Virginia, for Rapid Funding LLC.

Sandy T. Tucker, Williams Mullen, Richmond, VA, for USB Paine Webber.

## MEMORANDUM OPINION

DOUGLAS O. TICE, JR., Chief Judge.

Trial was held December 5, 2003, on trustee's complaint to recover money or property, to determine the extent, validity, and priority of liens, and to compel turnover of assets of the estate. In his complaint trustee alleged:

(1) that the assignment of and granting of a security interest in two of debtors' accounts in favor of defendant Rapid Funding is an avoidable preference under Bankruptcy Code § 547;

(2) that trustee is entitled to recover the accounts from Rapid Funding pursuant to § 550(a);

(3) that Rapid Funding's security interest in the accounts is invalid because not properly perfected;

(4) that because Rapid Funding's lien is invalid and unenforceable, the full value of the accounts could be used by the trustee for the benefit of the bankruptcy estate's unsecured creditors; and

(5) that debtors' interest in the accounts constitutes property of the estate and is subject to turnover under § 542.

At the conclusion of the trial, the court ruled from the bench that for purposes of the preference action the debtors were insolvent during the 90 days prior to filing their bankruptcy petition and took the remaining issues under advisement.

For the reasons stated in this opinion the court finds that debtors' granting of a security interest to Rapid Funding in their IRA and RMA accounts constitutes a pref-

erential transfer under § 547(b). The security interest was perfected by filing within 90 days of debtors' bankruptcy filing and is avoidable by trustee as a preference under § 550(a).

*Findings of Fact.*

## PROCEDURAL HISTORY

Debtors Jerimiah L. and Alberta H. Richards filed a chapter 13 bankruptcy petition on September 12, 2001. On April 22, 2002, debtors' case was voluntarily converted to chapter 7 and Bruce E. Robinson was subsequently appointed chapter 7 trustee. On November 12, 2002, trustee filed a complaint against defendants Rapid Funding, LLC, and USB Paine Webber to recover money or property, to determine the extent, validity, and priority of liens, and to compel turnover of assets of the estate in this adversary proceeding. Paine Webber filed its answer on January 9, 2003, and Rapid Funding answered trustee's complaint on January 15. On December 4, 2003, counsel for Rapid Funding submitted a memorandum of law in support of his client's position.

Trial on trustee's complaint was held December 5, 2003. On that date trustee also filed an answer to Rapid Funding's memorandum of law. At the conclusion of the evidence the court ruled from the bench that debtors were insolvent during the 90 days before filing their bankruptcy petition. The court requested counsel to submit proposed findings of fact and conclusions of law with respect to the remaining issues. Trustee filed proposed findings and conclusions on January 20, 2004, but the court has not received similar filings from defendants.

## FACTS

Between May 20, 1998, and September 25, 1998, Rapid Funding made a series of loans to debtors for the purpose of financing debtors' purchase of real estate for investment purposes. The properties served as collateral to secure the loans. On March 16, 2001, debtor Alberta Richards executed an assignment to Rapid Funding of two accounts held in her name by Paine Webber in exchange for Rapid Funding's release of its deed of trust on one of the properties. The accounts were described as one Individual Retirement Account and one Resource Management Account. When Paine Webber did not execute or agree to honor the assignment to Rapid Funding, Rapid Funding attempted to perfect its security interest in the accounts. On July 26, 2001, Rapid Funding recorded UCC financing statements in the office of the clerk of the Virginia State Corporation Commission and the office of the clerk of the Circuit Court for Henrico County. Debtors filed their chapter 13 bankruptcy petition on September 12, 2001.

*Discussion and Conclusions of Law.*

■ Section 547 of the Bankruptcy Code provides a trustee power to avoid pre-petition transfers of a debtor known as preferences. *See* 11 U.S.C. § 547(b); *Lubman v. C.A. Guard Masonry Contractor, Inc. (In re Gem Constr. Corp. of Va.),* 262 B.R. 638, 644 (Bankr.E.D.Va.2000). A preference is:

any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition ...

(5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 . . . ;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt.

11 U.S.C. § 547(b). All five elements of a preference must be proven in order for a court to avoid a transfer, and the burden of proving these elements rests with the trustee. *See* 11 U.S.C. § 547(g).

## TO OR FOR THE BENEFIT OF A CREDITOR

This element of the preference action is not in dispute. The parties have stipulated that on March 16, 2001, debtor Alberta Richards executed an assignment of her IRA and RMA accounts to Rapid Funding. Rapid Funding was a creditor of debtors when the transfer was made.

## FOR OR ON ACCOUNT OF ANTECEDENT DEBT

This element of the preference action is also not in dispute. The parties have stipulated that between May 20, 1998, and September 25, 1998, Rapid Funding made several loans to debtors. These loans were made to debtors before Alberta Richards transferred an interest in her IRA and RMA accounts to Rapid Funding.

## MADE WHILE DEBTORS WERE INSOLVENT

■ Pursuant to Bankruptcy Code § 547(f) a "debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). The burden is therefore on a defendant in a preference action to rebut this presumption with evidence of a debtor's solvency at the time of the transfer. When the rebuttal evidence is insufficient trustee is entitled to rely on the presumption of debtors' insolvency.

At the beginning of trial the court heard argument on the issue of debtors' solvency as an aspect of the preference action. Defendants relied upon the figures in debtors' bankruptcy schedules as evidence of debtors' solvency at the time of the transfer to Rapid Funding. Trustee alleged that despite the representations made in their schedules debtors were insolvent at the time of the transfer to Rapid Funding. Although debtors' schedules showed a positive net worth of $78,000.00, the debt owed to Rapid Funding was incorrectly scheduled as $140,000.00 rather than $273,000.00. According to trustee, debtors were insolvent because after substituting the correct figure for the Rapid Funding debt, debtors' liabilities exceeded their assets.

■ Upon consideration of counsel's arguments, the court ruled from the bench that evidence of debtors' schedules alone was not enough to rebut the presumption of debtors' insolvency. This court has held in the past that values in a debtor's schedules are not sufficient in themselves to shift the burden of going forward with regard to solvency. *See Miller & Rhoads. Inc. v.Robert Abbey, Inc. (In re Miller & Rhoads, Inc.),* 146 B.R. 950, 956–57 (Bankr.E.D.Va.1992). More accurate evidence than bankruptcy schedules is required to overcome the presumption of insolvency under § 547(f). *Id.* at 956 (suggesting that current appraisals, opinion testimony, or actual sales figures present more accurate testimony). In the absence of other supporting evidence, the court ruled that defendants retained their burden of proving solvency at trial.

The parties thereafter presented evidence of the values of debtors' assets in support of their positions on solvency. In

a joint exhibit tendered to the court at trial, Rapid Financing represented that the values of the assets were as follows:

| | | |
|---|---|---|
| (1) | 8211 Fredonia Avenue | $135,000.00 |
| (2) | 2516 Fourth Avenue | $ 75,000.00 |
| (3) | 2801 Fourth Avenue | $ 72,000.00 |
| (4) | 3401 Second Avenue | $ 72,000.00 |
| (5) | 3214 Enslow Avenue | $ 84,000.00 |
| (6) | IRA/MRA Accounts | $171,561.18 |

Trustee asserted the following asset values in the parties' joint exhibit:

| | | |
|---|---|---|
| (1) | 8211 Fredonia Road | $100,800.00 |
| (2) | 2516 Fourth Avenue | $ 43,000.00 |
| (3) | 2801 Fourth Avenue | $ 37,000.00 |
| (4) | 3401 Second Avenue | $ 37,500.00 |
| (5) | 3214 Enslow Avenue | $ 30,000.00 |
| (6) | IRA/MRA Accounts | $165,732.32 |

Both parties, by relying on these reported values in a comparison of debtors' total assets to total liabilities, intended to prove whether debtors were solvent on the date of the subject transfer. Finally, debtors testified at trial that the following were the values of their five pieces of real property:

| | | |
|---|---|---|
| (1) | 8211 Fredonia Road | $125,000.00 |
| (1) | 2516 Fourth Avenue | $ 50,000.00 |
| (2) | 2801 Fourth Avenue | $ 54,000.00 |
| (3) | 3401 Second Avenue | $ 50,000.00 |
| (4) | 3214 Enslow Avenue | $ 35,000.00 |

At the conclusion of the trial the court performed its own assets and liabilities calculation and ruled from the bench that debtors were insolvent during the preference period. Based upon the evidence presented, the court adopted the trustee's valuation of the IRA and MRA accounts, $165,732.32. The court also adopted the values provided by debtors for the five properties, which together total $314,000.00. Upon adding these two groups of debtors' assets to the remaining assets from the parties' trial exhibit, the court arrived at a grand asset total of $503,507.00. The court compared this to-tal to the $543,000.00 in liabilities listed on the parties' joint trial exhibit and concluded that debtors were under water by $43,000.00 during the preference period.[1]

## MADE ON OR WITHIN 90 DAYS OF THE FILING DATE

Bankruptcy Code § 547(e) governs when a transaction is made for purposes of a preference action. A transfer is made at the same time the transfer takes place between transferor and transferee if the transferee's interest is perfected within 10 days of that time. *See* 11 U.S.C. § 547(e)(2)(A). If the transferee's interest is not perfected within 10 days, the transfer is made on the date that the interest is ultimately perfected. *See* 11 U.S.C. § 547(e)(2)(B). Section 547(e)(1)(B) further defines the concept of perfection by stating that a "transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). In order to determine when a creditor cannot acquire a judicial lien superior to the transferee's interest, a court must look to applicable state law. *See Long v. Joe Romania Chevrolet, Inc. (In re Loken)*, 175 B.R. 56, 60–61 (9th Cir. BAP 1994); *Howard Thornton Ford, Inc. v. Fitzpatrick (Matter of Hamilton)*, 892 F.2d 1230, 1232 (5th Cir.1990); *Askin Marine Co. v. Conner (In re Conner)*, 733 F.2d 1560, 1562 (11th Cir.1984).

The Virginia Uniform Commercial Code–Secured Transactions determines the methods through which security interests may be perfected. According to the Virginia UCC, accounts such as debtors' IRA and RMA are investment property.[2]

---

**1.** In arriving at the $543,000.00 figure the court struck from the list of liabilities in the parties' trial exhibit the $61,093.26 debt owed to Fairbanks Capital and the $7,000.00 debt owed to Sallie Mae. The court accepted Rapid Funding's allegation that these debts were duplicated elsewhere in the exhibit.

**2.** Section 8.9–115 of the Virginia Code, which was in effect at the time of the assignment to

*See* Va.Code Ann. § 8.9–115(1)(f) (Michie 2000); Va.Code Ann. § 8.8A–501, 8.8A–102 (Michie 2001). There are two methods of perfecting a security interest in investment property under Virginia law. At the time of the assignment to Rapid Funding, Code § 8.9–115 stated that "a security interest in investment property may be perfected by *filing.*" Va.Code Ann. § 8.9–115(4)(b) (Michie 2000) (emphasis added). That same section also stated that "a security interest in investment property may be perfected by *control.*" Va.Code Ann. § 8.9–115(4)(a) (Michie 2000) (emphasis added).

Control is a defined term within the Virginia UCC. Section 8.9–115(1)(e) states, "[A] secured party has control over a securities account or commodity account if the secured party has control over all security entitlements or commodity contracts carried in the securities account or commodity account." Va.Code Ann. § 8.9–115(1)(e) (Michie 2000). Furthermore

[A] purchaser has "control" of a security entitlement if:

(1) the purchaser becomes the entitlement holder;

(2) the securities intermediary has agreed that it will comply with entitlement orders originated by the purchaser without further consent by the entitlement holder; or

(3) another person has control of the security entitlement on behalf of the purchaser or, having previously acquired control of the security entitlement, acknowledges that it has control on behalf of the purchaser.

Va.Code Ann. § 8.8A–106(d) (Michie 2001). The Code further defines a purchaser as "a person who takes by purchase" and purchase as "taking by sale, discount, negotiation, mortgage, pledge, lien, security interest, issue or re-issue, gift or any other voluntary transaction creating an interest in property." Va.Code Ann. § 8.1–201(33), (32) (Michie 2001).

Upon consideration of the definitions provided under Virginia law the court finds that Rapid Funding did not perfect its security interest in debtors' accounts by control. At no point after the parties executed the assignment was Rapid ever in control of or holding the accounts. Rapid Funding also did not execute an agreement with Paine Webber, the securities

Rapid Funding, defines investment property as "(i) a security, whether certificated or un-certificated; (ii) a security entitlement; (iii) a securities account; (iv) a commodity contract; or (v) a commodity account." Va.Code Ann. § 8.9–115(1)(f) (Michie 2000). According to the revised Virginia UCC, a securities account is "an account to which a financial asset is or may be created in accordance with an agreement under which the person maintaining the account undertakes to treat the person for whom the account is maintained as entitled to exercise the rights that comprise the financial asset." Va.Code Ann. § 8.8A–501(a) (Michie 2001). The revised Virginia UCC also defines a financial asset as:
  (i) a security;
  (ii) an obligation of a person or a share, participation, or other interest in a person or in property or an enterprise of a person,

which is, or is of a type, dealt in or traded on financial markets, or which is recognized in any area in which it is issued or dealt in as a medium for investment; or
  (iii) any property that is held by a securities intermediary for another person in a securities account if the securities intermediary has expressly agreed with the other person that the property is to be treated as a financial asset under this title.
Va.Code Ann. § 8.8A–102(a)(9) (Michie 2001). Debtors' IRA and RMA accounts were accounts into which debtors deposited money that was in turn invested in securities. Debtors created in the accounts financial assets and Paine Webber served as a securities intermediary by maintaining them. Accordingly, debtors' accounts are investment property under the Virginia Code.

intermediary, to acknowledge Rapid's control of the accounts and to compel compliance with Rapid's directions regarding the accounts. The parties stipulated that Paine Webber did not execute or agree to honor the assignment that was received from debtors and Rapid Funding. Finally, Rapid Funding did not engage Paine Webber in any sort of agency relationship in which Paine could be said to control the accounts on Rapid's behalf.

Although Rapid Funding did not perfect its security interest through control it did perfect its security interest by filing. The parties have stipulated that on July 26, 2001, Rapid Funding recorded UCC financing statements in the office of the clerk of the Virginia State Corporation Commission and the office of the clerk of the Circuit Court for Henrico County. Pursuant to the statute in effect on the dates in question, Va Code Ann. § 8.9–115(4)(b), the filing of these statements perfected the security interest in debtors' accounts granted to Rapid Funding through the assignment.

Debtors filed their bankruptcy petition on September 12, 2001. Accordingly, the subject transfer of an interest in debtors' accounts to Rapid Funding occurred within 90 days of debtors' bankruptcy filing upon Rapid Funding's perfection of a security interest in the accounts by filing financing statements on July 26, 2001.

ENABLES CREDITOR TO RECEIVE MORE THAN IT WOULD IN CHAPTER 7, THE TRANSFER HAD NOT BEEN MADE, AND CREDITOR RECEIVED PAYMENT

■■ Bankruptcy Code § 547(b)(5) requires the court to determine whether as a result of the alleged preferential transfer the creditor received more than it would have been entitled to in a hypothetical chapter 7 case in which the transfer had not occurred. *See* 11 U.S.C. § 547(b)(5).

The court must determine the subject transfer's preferential nature not at the time of the transfer but rather by its effect at the time of ultimate asset liquidation. *See Palmer Clay Prods., Co. v. Brown,* 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936). Generally, "if the chapter 7 distribution to the class of creditors to which the recipient is a part ... will be less than 100%, the creditor who has received an otherwise preferential payment ... has received more than would have been received in liquidation if the payment had not been made." *Huennekens v. Tye (In re Kel–Wood Timber Prods. Co.),* 122 B.R. 498, 502 (Bankr.E.D.Va.1990).

The court finds that the perfection of a security interest in debtors' accounts in this case enabled Rapid Funding to receive more than it would have received in a hypothetical chapter 7 case in which the transfer had not occurred. Rapid Funding is a member of the secured creditor class because it holds several deeds of trust on parcels of debtors' real property. As a result of the financial transaction executed by the parties during the preference period, Rapid Funding received $29,548.00 in proceeds from the sale of debtors' Rose Avenue real property and was able to perfect a security interest in debtors' IRA and RMA accounts worth $165,732.32. Debtors' schedules reveal that because their liabilities to secured creditors ($359,-914.00) exceed their assets ($336,622.00), debtors' secured creditors will not receive 100% payment of their debts. Accordingly, Rapid Funding in receiving a security interest in cash accounts during the preference period received more than it would have otherwise received in debtors' chapter 7 case if the transaction had not occurred.

DEFENSES

Rapid Funding has asserted several defenses to trustee's preference claim. The

first two defenses involve allegations that the assignment agreement gave Rapid a type of title to debtors' accounts. First, Rapid Funding alleges that the transfer at issue was not preferential because legal title vested in it upon execution of the assignment agreement. Before the 90 day preference period commenced, debtors relinquished control of the accounts to Rapid and directed Paine Webber as bailee to hold them for Rapid. Alternatively, Rapid alleges that the assignment imposed upon debtors' accounts an equitable lien in favor of Rapid that trustee as a judgment creditor cannot avoid. In the event that the court finds that Rapid's interest in debtors' accounts did not rise to the level of legal or equitable title, Rapid finally alleges that its security interest in the accounts was perfected when bailee Paine Webber received the executed assignment agreement.

None of the defenses cited by Rapid Funding are listed as defenses to preference claims in § 547(c). However, the court will address Rapid's three defenses in turn.

### The Assignment Vested Legal Title in Rapid Funding

■ Rapid Funding incorrectly represents that the assignment agreement vested legal title to debtors' accounts in Rapid. The agreement states that the accounts were "held by Lender (Rapid Funding) as security for the payment of any liability and performance of all obligations of the Richards to Lender" and that the "assignment is made to assure that Lender is to have and to hold said accounts unto itself and its successors and assigns, as additional collateral security for Deeds of Trust Notes from the Richards payable to Lender." By the agreement's terms debtors also retained rights in the accounts: (1) to periodically withdraw up to $5,000.00 per month without Rapid's approval; (2) to withdraw additional funds in the event of an emergency with Rapid's approval; and (3) to grant other liens or security interests with respect to the accounts upon Rapid's written consent. The agreement did not rob debtors of their entire interest in the accounts. The document plainly granted Rapid a security interest but did not vest legal title to the accounts in Rapid Funding.

### The Assignment Created an Equitable Lien in Favor of Rapid Funding

■ Also unpersuasive is Rapid Funding's argument that the assignment granted Rapid an equitable lien in the property. In its memorandum of law, Rapid Funding cites cases in which courts have granted equitable liens in order to enforce contractual subrogation clauses and payment of attorneys' fees. *See Wal–Mart Stores, Inc. v. Carpenter (In re Carpenter)*, 252 B.R. 905 (E.D.Va.2000); *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310 (4th Cir.1996). The *Angeles Real Estate* case cited by Rapid Funding interprets Maryland law on assignments. *See Angeles Real Estate Co. v. Kerxton (In re Constr. Gen., Inc.)*, 737 F.2d 416 (4th Cir.1984). The one Virginia state court case cited by Rapid Funding construes a 1873 Virginia Code section that addresses equitable treatment of contracts for sale. *See First Nat'l Bank of Alexandria v. Turnbull & Co.*, 73 Va. 695 (1880).

The cited cases do not support Rapid's argument. The Virginia UCC provides the current law on perfecting a security interest in debtors' accounts. Accordingly, the court finds that no equitable lien arose in favor of Rapid Funding as a result of the execution of the parties' assignment agreement.

**Rapid Funding's Security Interest was Perfected when Bailee Paine Webber Received the Executed Assignment Agreement**

Finally, the court rejects Rapid Funding's argument that its security interest was perfected when Paine Webber received the executed assignment agreement. As discussed above Rapid Funding could have perfected its security interest in debtors' accounts following execution of the assignment agreement through control of the accounts by: (1) obtaining control over all of the securities within the IRA and RMA accounts; (2) entering into an agreement whereby Paine Webber would comply with orders from Rapid Funding as entitlement holder; or (3) entering into an agreement with Paine Webber in which Paine Webber acknowledged that it had control of the accounts on behalf of Rapid Funding. *See* Va.Code Ann. § 8.9–115(1)(e) (Michie 2000); Va.Code Ann. § 8.8A–106(d) (Michie 2001). Rapid Funding never obtained control because it never held debtors' accounts itself or obtained Paine Webber's consent to treat Rapid as entitlement holder. Any other method of obtaining control suggested by Rapid Funding is not recognized under the Virginia UCC.

RECOVERY OF PROPERTY TRANSFERRED

The court having determined that debtors' granting of a security interest in the IRA and RMA accounts was an avoidable preferential transfer, it follows that trustee is entitled to recover the accounts from Paine Webber pursuant to 11 U.S.C. § 550(a).

A separate order will be entered.